UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| FRIENDS OF AMADOR COUNTY, BEA CRABTREE, JUNE GEARY, | NO. CIV. 2:10-348 WBS KJM |
| Plaintiffs, | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| v. | |
| KENNETH SALAZAR, SECRETARY OF THE UNITED STATES DEPARTMENT OF INTERIOR, United States Department of Interior, THE NATIONAL INDIAN GAMING COMMISSION, GEORGE SKIBINE, Acting Chairman of the National Indian Gaming Commission, THE STATE OF CALIFORNIA, Arnold Schwarzenegger Governor of the State of California, | |
| Defendants. | |

----oo0oo----

Plaintiffs Friends of Amador County, Bea Crabtree, and June Geary brought this action against defendants Kenneth Salazar in his capacity as the Secretary of the United States Department of Interior ("Secretary"), the National Indian Gaming Commission

1

("NIGC"), and George Skibine (collectively the "Federal Defendants"), as well as the State of California ("State") and Governor Arnold Schwarzenegger ("Governor," collectively the "State Defendants") arising out of plaintiffs' objections to a tribal-state compact allowing the construction of a casino by the Buena Vista Rancheria of Me-Wuk Indians ("Tribe") in Amador County.  Presently before the court is the State Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and Rule 19 for failure to join a required party.

I.   Factual and Procedural Background

In 1999, then-California Governor Gray Davis entered into a series of tribal-state compacts with fifty-nine different Indian tribes, including the Tribe, allowing class III gaming[1] on tribal land pursuant to the compacting requirements of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721.  (Compl. ¶ 22.)  These compacts were subsequently ratified by the California legislature.  (Id.)  In August 2004, the Tribe and the

---

[1] Three classes of gaming are subject to regulation under IGRA.  Class I gaming includes "social games solely for prizes of minimal value or traditional forms of Indian gaming," 25 U.S.C. § 2703(6), and is subject to solely tribal regulation.  Id. § 2710(a)(1).  Class II gaming is regulated through joint federal-tribal regulation, id. § 2710(a)(2), and includes bingo and other similar games and card games that are "explicitly authorized" or "are not explicitly prohibited by laws of the State . . . but only if such card games are played in conformity" with the state's laws and regulations.  Id. § 2703(7).  Class III gaming includes "all forms of gaming that are not class I gaming or class II gaming," such as casino games, slot machines, and lotteries, id. § 2703(8), and can only be authorized through a tribal-state compact, subject to federal approval and oversight.  Id. § 2710(d)(1).

2

1  Governor negotiated and completed an amended compact (the
2  "Compact"), which was ratified by the California legislature and
3  submitted to the Secretary as required by IGRA in September 2004.
4  <u>See</u> Cal. Gov't Code § 12012.45.  The Secretary then approved the
5  Compact, which became effective as a matter of law.  Notice of
6  Approved Tribal-State Class III Gaming Compact, 69 Fed. Reg.
7  76004-01 (Dec. 20, 2004).

8         Plaintiffs allege that the Compact between the State
9  and the Tribe is illegal under IGRA.  The Complaint alleges that
10 the Tribe's land is not eligible for class III gaming because it
11 is owned in fee simple, not in trust by the federal government,
12 and accordingly is not "Indian land" as required under the
13 statute.  (Compl. ¶¶ 8-9.)  The Complaint further claims that the
14 Tribe's federal recognition is invalid because it was established
15 by individuals who were not true descendants of the Buena Vista
16 Rancheria of Me-Wuk Indians and alleges that plaintiffs Crabtree
17 and Geary are true descendants of the peoples who lived on the
18 Buena Vista Rancheria land.  (<u>Id.</u> ¶¶ 16-18.)  Plaintiffs
19 accordingly allege that the Federal Defendants' approval of class
20 III gaming on the Tribe's land was arbitrary, capricious, and
21 contrary to IGRA and that the State Defendants acted unlawfully
22 when they determined that the Tribe was eligible for class III
23 gaming and entered into the Compact.  (<u>Id.</u> ¶¶ 10, 22-27.)

24        The Complaint alleges four causes of action.  The first
25 claim alleges that both the Federal and State Defendants violated
26 IGRA by approving class III gaming on ineligible lands.  (<u>Id.</u> ¶
27 34.)  The second claim alleges that the State Defendants violated
28

3

article IV, section 19 of the California Constitution[2] by approving an illegal tribal-state compact because the Tribe is ineligible for class III gaming under IGRA. (Id. ¶ 36.) Plaintiffs' third claim alleges that the approval of the Tribe's gaming ordinance and the Compact violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596, because such approval was arbitrary and capricious and in violation of IGRA. (Id. ¶ 42.) The fourth claim alleges that the Governor failed to make the necessary determination required by § 2719 of IGRA that the proposed gaming would not be detrimental to the surrounding community. (Id. ¶¶ 50-52.) The Complaint requests the court to declare that the Tribe's land is not eligible for gaming under IGRA, that the Compact is invalid under IGRA and APA, and that the environmental assessment of the land was inadequate. The Complaint also asks the court to enjoin the Tribe from further pursuit of class III gaming on its land and create a constructive trust over funds currently being paid to the Tribe. The State Defendants now move to dismiss plaintiffs' first, second, and

---

[2] Article IV, section 19 of the California Constitution provides in relevant part:

> [T]he Governor is authorized to negotiate and conclude compacts, subject to ratification by the Legislature, for the operation of slot machines and for the conduct of lottery games and banking and percentage card games by federally recognized Indian tribes on Indian lands in California in accordance with federal law. Accordingly, slot machines, lottery games, and banking and percentage card games are hereby permitted to be conducted and operated on tribal lands subject to those compacts.

Cal. Const. art IV § 19(f).

fourth causes of action[3] pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 19.

II. Discussion

    A.    <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). The court is presumed to lack jurisdiction unless the contrary appears affirmatively from the record. <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 342 n.3 (2006). Consistent with these basic jurisdictional precepts, the Ninth Circuit has articulated the standard for surviving a motion to dismiss for lack of jurisdiction as follows:

> When subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.

<u>Tosco Corp. v. Cmtys. for a Better Env't</u>, 236 F.3d 495, 499 (9th Cir. 2001), <u>abrogated on other grounds by</u> <u>Hertz Corp. v. Friend</u>, --- U.S. ----, 130 S. Ct. 1181 (2010) (internal citations and internal quotation marks omitted). Additionally, "[i]f the court

---

[3] The State Defendants do not challenge plaintiffs' third cause of action for violation of the APA, because it is only alleged against the Federal Defendants and because the APA cannot be used to review the decisions of state government agencies. <u>See</u> 5 U.S.C. § 701(b)(1).

5

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Eleventh Amendment immunity poses "a bar to federal jurisdiction over suits against non-consenting States." Alden v. Maine, 527 U.S. 706, 730 (1999). Sovereign immunity extends to suits in federal court against a state by its own citizens as well as by citizens of another state. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). This jurisdictional bar applies to suits "in which the State or one of its agencies or departments is named as the defendant" and "applies regardless of the nature of the relief sought," Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), including suits for equitable relief. Cory v. White, 457 U.S. 85, 91 (1982).

"The Eleventh Amendment immunity is designed to allow a state to be free to carry out its functions without judicial interference directed at the sovereign or its agents." V. O. Motors, Inc. v. Cal. State Bd. of Equalization, 691 F.2d 871, 872 (9th Cir. 1982). While California has waived its immunity from suit by tribes asserting claims related to tribal-state compacts, Cal. Gov't Code § 98005, the State has not waived its immunity from suit by individuals claiming a Compact violates IGRA or the California Constitution. Accordingly, any such claims alleged

6

directly against the State are barred. See <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 47 (1996) (holding that Congress's enactment of IGRA could not abrogate a state's sovereign immunity).

However, "[g]enerally injunctions against state officers are not barred by the Eleventh Amendment." <u>Taylor v. Westly</u>, 402 F.3d 924, 930 (9th Cir. 2005) (citing <u>Ex parte Young</u>, 209 U.S. 123 (1908)). This exception is premised on the notion that "no state could or would authorize a state officer to act contrary to the federal Constitution, so any such action would be ultra vires . . . ." <u>Id.</u> To determine whether "the doctrine of <u>Ex Parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>ACS of Fairbanks, Inc. v. GCI Commc'n Corp.</u>, 321 F.3d 1215, 1216-17 (9th Cir. 2003) (citation omitted).

Plaintiffs have alleged that the Governor violated federal law--IGRA--when he approved the Compact to allow the Tribe's class III gaming plans. Taking plaintiffs' allegations as true, the Governor acted <u>ultra vires</u> and is properly subject to suit under <u>Ex parte Young</u>. See <u>Artichoke Joe's v. Norton</u>, 216 F. Supp. 2d 1084, 1110 (E.D. Cal. 2002). Plaintiffs' first and fourth claims allege that the Governor violated IGRA when he entered into the Compact with the Tribe, and thus plaintiffs ask the court to declare the Compact invalid, enjoin any future action related to the Tribe's planned casino, and enjoin future payments from the State to the Tribe. Although the <u>Ex parte</u>

7

Young doctrine may not be invoked to provide declaratory relief against a state official for solely past violations of federal law, Green v. Mansour, 474 U.S. 64, 68 (1985), it is appropriate where the past violation of law is accompanied by an ongoing violation of federal law. Papasan v. Allain, 478 U.S. 265, 282 (1986). The declaratory and injunctive relief requested by plaintiffs is appropriate because plaintiffs allege the Governor's decision to approve the Compact continues to violate federal law and presently harms them. See Artichoke Joe's, 216 F. Supp. 2d at 1111.

In Seminole Tribe, the Supreme Court held that the Ex parte Young doctrine did not apply to the Seminole Tribe's suit against Florida to enforce § 2710(d)(3) of IGRA "because Congress enacted a remedial scheme, § 2710(d)(7), specifically designed for the enforcement of that right." Seminole Tribe, 517 U.S. at 76. The Court found that the detailed procedures established by Congress through which a Tribe could resolve grievances arising in the negotiation of tribal-state compacts precluded the Tribe from access to a suit under the Ex parte Young doctrine because that remedy was much broader than the remedies available under IGRA and was therefore inconsistent with the Act. See id. at 74 ("[W]here Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Ex parte Young.").

The Seminole Tribe exception to Ex parte Young is inapplicable here. Unlike the provisions at issue in Seminole

8

Tribe, Congress did not create a detailed remedial scheme to enforce § 2710(d)(1), the section that permits class III gaming by tribes.  See Artichoke Joe's, 216 F. Supp. 2d at 1110 n.34. IGRA does not provide a specific method for citizens to challenge the legitimacy of determinations of eligibility for class III gaming and the State Defendants do not identify any section of IGRA that contains the sort of detailed remedial scheme provided in § 2710(d)(7).  See Seminole Tribe, 517 U.S. at 74-75. Accordingly, plaintiffs' first and fourth claims against the Governor for violations of IGRA are not barred by sovereign immunity and are properly brought under the Ex parte Young doctrine.

However, because Ex parte Young does not apply to supplemental state law claims, see Pennhurst, 465 U.S. at 120-22, the court will grant the Governor's motion to dismiss based on sovereign immunity with regard to plaintiffs' second claim against him under article IV, section 19 of the California Constitution.  See 28 U.S.C. § 1367(c); Ulaleo v. Paty, 902 F.2d 1395, 1400 (9th Cir. 1990) (explaining that it "would offend federalism" and not further the justification for the Ex parte Young exception for a federal court to decide a claim that a state violated its own constitution).

B.   Motion to Dismiss for Failure to State a Claim

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

9

(1972). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007)).

As the Supreme Court has noted, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Touche Ross & Co. v. Redington, 442 U.S. 560, 568, (1979) (citation omitted). The statute "must either explicitly create a right of action or implicitly contain one." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223 (9th Cir. 2008). IGRA does not explicitly authorize private individuals to sue under the statute for failure of a state, tribe, or the National Indian Gaming Commission to comply with its provisions. However, IGRA does expressly provide for various causes of action that can be brought by tribes, states, and the federal government for violations of particular provisions of IGRA. Hein v. Captain Grande Band of Diegueno Mission Indians, 201 F.3d 1256, 1260 (9th Cir. 2000); see, e.g., 25 U.S.C. § 2710(d)(7)(A)(ii), (iii) (State and Secretary of the Interior may bring suit); id. § 2711(d) (tribes may bring suit to compel action by Chairman after a time lapse); id. § 2714 (certain decisions made by the Commission are final agency decisions appealable under the APA).

To determine whether a private right of action is implied in a statute, a court must consider:

> (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted--that is, [whether] the statute create[s] a federal right in favor

10

>of the plaintiff"; (2) whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether the cause of action is "consistent with the underlying purposes of the legislative scheme"; and (4) whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law."

In re Digimarc, 549 F.3d at 1231 (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)). The second factor, legislative intent, is "the key inquiry in this calculus," since the other factors provide indicia of intent. Id. (quoting Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang, 376 F.3d 831, 835 (9th Cir. 2004)).

The Supreme Court has held that "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." Nat'l R.R. Passenger Corp. v. Nat'l Assoc. of R.R. Passengers, 414 U.S. 453, 458 (1974). The Ninth Circuit has noted that "where IGRA creates a private cause of action, it does so explicitly," and thus "plaintiffs [cannot] sue for every violation of IGRA by direct action under the statute." Hein, 201 F.3d at 1260.

Had Congress intended for individuals to have a private cause of action to enforce the class III gaming requirements of IGRA, it would have provided for it explicitly, as it did for enforcement of other sections of the Act by tribes, states, and the federal government. See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla., 63 F.3d 1030, 1049 (11th Cir. 1995) ("Obviously, then, when Congress wished to provide a private . . . remedy, it knew how to do so and did so expressly.") (quoting

11

1 Redington, 442 U.S. at 572); see also Hartman v. Kickapoo Tribe
2 Gaming Comm'n, 319 F.3d 1230, 1232 (10th Cir. 2003) (holding that
3 an individual's claims against a tribe for violations of IGRA had
4 to be dismissed because "IGRA provides no private right of action
5 against the Tribe, the State, the federal government or any
6 official or agency thereof.").[4] Accordingly, plaintiffs' claims
7 against the Governor will be dismissed.[5]

8     IT IS THEREFORE ORDERED that the State of California
9 and Governor Arnold Schwarzenegger's motion to dismiss
10 plaintiffs' claims against the State Defendants be, and the same
11 hereby is, GRANTED.

12 DATED: October 15, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[4] While the Complaint could be read to allege that the Governor violated both IGRA and the terms of the Compact, plaintiffs' counsel acknowledged at oral argument that plaintiffs do not bring a claim under the Compact. Indeed, as third parties to the Compact, they could not do so. Section 15.1 of the Compact provides that, "[e]xcept to the extent expressly provided under this Gaming Compact, this Gaming Compact is not intended to, and shall not be construed to, create any right on the part of a third party to bring an action to enforce any of its terms." (State Defs.' Req. Judicial Notice Ex. H ("Compact") § 10.1.)

[5] Because plaintiffs' claims against the State Defendants are dismissed pursuant to Rules 12(b)(1) and 12(b)(6), the court will not address the State Defendants' argument that the Complaint should be dismissed for failure to join the Tribe as a required party under Rule 19.