1
2
3
4
5

PADRAIC I. MCCOY
Tilden McCoy + Dilweg LLP
2334 Broadway, Suite D
Boulder, CO 80304
Telephone: (303) 323-1922
Fax: (303) 416-8707
Email: pmccoy@tildenmccoy.com
California State Bar No. 223341
*Attorneys for Buena Vista*
*Rancheria of Me-wuk Indians*

6
7
8
9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22

FRIENDS OF AMADOR COUNTY,
BEA CRABTREE, JUNE GEARY,

                                    Plaintiffs,

        v.

KENNETH SALAZAR, SECRETARY
OF THE UNITED STATES
DEPARTMENT OF INTERIOR,
United States Department of Interior,
THE NATIONAL INDIAN GAMING
COMMISSION, GEORGE SKIBINE,
Acting Chairman of the National Indian
Gaming Commission, et al.,

                                    Defendants.

2:10-cv-00348-WBS-KJM

TRIBE'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

(Fed. R. Civ. P. 19)

Date:           September 26, 2011
Time:           2:00 p.m.
Courtroom:      5
Judge:          The Honorable William
                B. Shubb
Trial Date:     None Set
Action Filed:   February 10, 2010

23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... 3

I. INTRODUCTION ............................................................................................................... 6

II. FACTUAL BACKGROUND ............................................................................................ 7

III. ARGUMENT:  THE TRIBE AND THE STATE ARE NECESSARY AND INDISPENSIBLE
PARTIES ................................................................................................................................. 13

  A. The Tribe and State are Each Required for the Just Adjudication of Plaintiffs' Claims......... 14

    1. The Court Cannot Provide Complete Relief to the Present Parties in the Absence of
    Either the Tribe or the State—and Neither Such Entity May be Involuntarily Joined..... 15

    2. This Action Implicates Several Fundamental and Legally Protected Interests of the
    Tribe and its Adjudication in the Tribe's Absence will therefore Impair or Impede the
    Tribe's Ability to Defend Those Fundamental Interests. .................................................. 17

      a. This Action Implicates the Tribe's Gaming Related Interests. ............................... 18

      b. This Action Challenges the Legal Existence of the Tribe and its Indian Reservation
      and further Implicates other Fundamental Tribal Government Interests. ................... 20

    3. The United States has a Conflict and Cannot and Has Not Vigorously or Adequately
    Represented the Tribe's Various Gaming and Government Interests. ............................. 23

    4. The State has a Legally Protected Interest in the Subject Matter of this Action and the
    Disposition of this Action Will Impair Its Ability to Protect that Interest. ..................... 28

    5. The State's Interests are Not Protected by the United States Here. ............................ 29

    6. The Tribe and State's Absence Would Lead to Inconsistent Obligations. ................... 30

  B. The Tribe and the State Cannot Be Joined Because of Their Sovereign Immunity. ............... 31

  C. The Tribe and the State Are Indispensable to this Case and the Suit May Not Proceed in
  Equity and Good Conscience in Their Absence. .......................................................................... 31

    1. The Tribe and the State will Each be Prejudiced if this Case Proceeds in the Absence
    of Both Parties. ............................................................................................................... 32

      a. The Tribe's Interest in Conducting Gaming On and Governing Its Rancheria Will be
      Prejudiced if this Case Proceeds. .............................................................................. 32

      b. The State's Interests in Allowing Indian Gaming under IGRA and in Raising
      Revenue Will be Prejudiced if this Case Proceeds. ................................................... 33

    2. Prejudice to the Tribe and the State Cannot be Lessened or Avoided through Protective
    or Crafted Relief. ............................................................................................................ 33

    3. A Judgment Rendered in the Tribe and State's Absence Will be Inadequate. ............. 34

    4. The State and Tribe's Sovereign Immunity Favors Dismissal. .................................... 34

IV. CONCLUSION ................................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

*American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002)............................ 19, 24, 35

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987) ................................. 9

*Citizen Potawatomi Nation v. Norton*, 248 F.3d 993 (10th Cir. 2001) ................................. 24

*Clinton v. Babbitt*, 180 F.3d 1081 (9th Cir. 1999) ........................................................ 15, 17, 19

*Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496

  (9th Cir.1991) ............................................................................................... 17, 20

*Davis v. United States*, 192 F.3d 951 (10th Cir. 1999) ..................................................... 35

*Davis v. United States*, 199 F.Supp.2d 1164 (W.D.Okla. 2002)......................................... 30

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150

  (9th Cir. 2002).............................................. 14, 15, 18, 19, 21, 22, 30, 34

*Dimond v. District of Columbia*, 792 F.2d. 179 (D.C. Cir. 1986) ...................................... 27

*E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010).................................... 13, 14, 17, 30

*Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890 (10th Cir. 1989)........................ 25

*Gila River Indian Cmty. v. United States*, CV-10-1993-PHX-DGC, 2011 WL 826282

  (D. Ariz. Mar. 3, 2011) ................................................................................... 10

*Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996) ......................................................... 19

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491

  (D.C. Cir. 1995) .......................................................................... 28, 29, 32, 34, 35

*Kickapoo Tribe of Oklahoma v. Lujan*, 728 F.Supp. 791 (D.D.C. 1990) ..................................... 24, 27

*Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751 (1998)....................... 31

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F.Supp.2d

995 (W.D.Wis. 2004) ................................................................................. 19, 29

*Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975) ................................. 17, 18

*Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977) ........................................ 24

*McClendon v. U.S.*, 885 F.2d 627 (9th Cir. 1989) .......................................... 19

*Miami Nation of Indians of Indiana, Inc. v. U.S. Dept. of the Interior*, 255 F.3d 342

   (7th Cir. 2001) ...................................................................................... 35

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) ............... 35

*Northern Arapaho Tribe v. Harnsberger*, 660 F.Supp.2d 1264 (D.Wyo. 2009) ............... 23

*Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088 (9th Cir. 1994) ...... 15, 17, 25, 35

*Pueblo of Sandia v. Babbitt*, 47 F.Supp.2d 49 (D.D.C. 1999) ............................. 29

*Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456 (9th Cir. 1994) ......................... 20, 21

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978) ...................................... 22, 31, 35

*Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992) ................................ 22, 24, 27

*Texas v. United States*, 497 F.3d 491 (5th Cir. 2007) .................................... 29

*U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476 (7th Cir. 1996) ................... 24

*United States v. Mitchell*, 463 U.S. 206 (1983) .......................................... 23

*W. Shoshone Bus. Council For & on Behalf of W. Shoshone Tribe of Duck Valley Reservation*

   *v. Babbitt*, 1 F.3d 1052 (10th Cir. 1993) .......................................... 35

*Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765 (D.C. Cir. 1986) ..... 34, 35

**Statutes**

5 U.S.C. §§ 500-596 ................................................................................. 12

18 U.S.C. § 1151 .................................................................................... 12

25 U.S.C. § 2702 .................................................................................... 9

25 U.S.C. § 2703(4) ........................................................................................................ 9

25 U.S.C. § 2710(b) ...................................................................................................... 16

25 U.S.C. § 2710(d)(1) .................................................................................................. 9

25 U.S.C. § 2710(d)(8)(A)-(C) .................................................................................... 11

25 U.S.C. § 479a-1 ........................................................................................................ 10

**Rules**

Fed. R. Civ. P. 19 .......................................................... 6, 12-14, 18, 26-27, 30-32, 34-35

Fed. R. Evid. 201(b) .................................................................................................... 8, 9

Fed. R. Evid. 902(5) ........................................................................................................ 7

**Treatises**

Felix Cohen, *Handbook of Indian Law* (2005 ed.) ...................................................... 20

**Other**

50 Fed. Reg. 6055-02 (1985) .......................................................................................... 8

65 Fed. Reg. 31,189 (May 16, 2000) ............................................................................ 11

69 Fed. Reg. 76,004 (Dec. 20, 2004) ........................................................................... 11

75 Fed. Reg. 60810 (October 1, 2010) .................................................................. 7, 8, 21

**Law Review Articles**

Ann C. Juliano, "Conflicted Justice: The Department of Justice's Conflict of Interest in Representing

   Native American Tribes," 37 *Ga. Law. Rev*. 1307 (2003) ....................................... 23-24

# I. INTRODUCTION

Plaintiffs ask this Court to determine substantive issues in the absence of indispensible parties—the Tribe and the State of California.  Plaintiffs seek to prevent the Tribe from developing a casino on the Tribe's Indian reservation by attacking the federal government's approval of a gaming compact to which only the Tribe and State (which has been dismissed) are parties.  Despite the government's determination more than six years ago that the Tribe's reservation constitutes "Indian lands" under the Indian Gaming Regulatory Act, Plaintiffs attack the status of the reservation under that act and even challenge the Tribe's legal existence, both of which issues were established twenty-four and twenty-seven years ago, respectively, in two federal court stipulations that expressly restored the Tribe and Rancheria's federal recognition; because the Tribe is party to these two stipulations but is not a party here, this case should not proceed.  In addition, if this case proceeds in the Tribe's absence, it will be unable to adequately defend the fundamental and legally protected interests that Plaintiffs attack, and even if the Court granted Plaintiffs' broad requests, the Tribe would not be bound by the Court's order.  Related, due to competing loyalties, the United States cannot adequately represent the unique and fundamental interests of the Tribe in this litigation.  The Tribe therefore asks this Court to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 19.

Finally, while cast as a procedural dispute, the complaint is aimed directly at the Tribe and in reality seeks to circumvent the well-founded immunity of Indian tribes from unconsented suit.  While the Court's dismissal may leave Plaintiffs without a remedy, Congress never intended for these kinds of plaintiffs to have a remedy as to gaming compact approvals and, in any event, courts, including the Ninth Circuit, have consistently held that tribal sovereign immunity outweighs a plaintiff's interest in litigating its claims.  In equity and good conscience, this case should not proceed.

## II. FACTUAL BACKGROUND

The Buena Vista Rancheria of Me-Wuk Indians (the "Tribe") is a federally-recognized Indian tribe, listed as such on the government's formal list of Indian tribes. *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 75 Fed. Reg. 60810, October 1, 2010. It occupies a small, 67-acre Indian reservation known as the Buena Vista Rancheria, which is located in Amador County, California (the "Rancheria"). The United States Department of the Interior, through the National Indian Gaming Commission ("NIGC"), Office of General Counsel, determined more than six years ago, in a published decision in which the Department of the Interior, Office of the Solicitor concurred, that the Rancheria is an "Indian reservation" under federal law and, for that reason, constitutes gaming-eligible "Indian lands" under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* ("IGRA"), which do not need to be placed into trust to support gaming. *See NIGC Indian Lands Opinion*, June 30, 2005 ("NIGC Opinion"), a true and correct copy of which is attached hereto as **Exhibit 1**.[1]

As the NIGC Opinion explains, since prior to 1900, Me-Wuk Indians have lived on a piece land in rural Amador County they called Buena Vista. Pursuant to federal appropriation acts permitting the purchase of land for Indian reservations in California, the United States purchased in 1927 and held this land for the express benefit of Me-Wuk Indians there. In 1935, the Me-Wuks—then known as the Buena Vista Rancheria of Me-Wuk Indians of California—voted to accept the terms of the Indian Reorganization Act, 25 U.S.C. § 476 *et seq.* As a result, as of 1935, the Buena Vista Rancheria's status as a federally-recognized Indian tribe was confirmed.

---

[1] The NIGC Opinion was filed in this action as Exhibit G to the Request for Judicial Notice for State Defendants' Motion to Dismiss, Doc. 13-2, pdf 1 of 3. For the reasons stated in State Defendants' Request, namely pursuant to Fed. R. Evid. 902(5), the Tribe requests this Court take judicial notice of the NIGC Opinion.

The United States terminated the Buena Vista Rancheria and numerous other California tribes in the late 1950s pursuant to the California Indian Rancheria Act of 1958 (the "Termination Act"). Under that Act, the Tribe's government-to-government relationship with the United States was severed, and the Tribe and its members were no longer eligible for the services that the United States provides to Indian tribes and their members. The 67-acre parcel that makes up the Rancheria was converted from trust to fee lands and, pursuant to a 1961 plan of distribution, conveyed to the two then-occupants of the Rancheria and Tribal members, Louis and Annie Oliver (the current Tribal Chairwoman's great-grandparents).

In 1979, the Buena Vista Me-Wuk Indians and several other terminated California Indians brought suit against the United States in the Northern District of California challenging the termination of the Indian rancherias affected by the Termination Act on the grounds that the Secretary failed to fulfill conditions precedent set forth in the Termination Act. *Tillie Hardwick v. United States*, No. C79-1710-SW (U.S.D.C. N.D. Cal. 1983). In 1983, the Buena Vista Tribe and the United States negotiated a settlement to the litigation that the U.S. District Court entered as a stipulated judgment (the "1983 *Hardwick* Stipulation," a true and correct copy of which is attached hereto as **Exhibit 2**[2]). The 1983 Stipulation expressly restored the Tribes' status as a federally-recognized Indian tribe and expressly restored the Tribal members to acknowledgement as Indians under federal law. As a result of its restoration, the "Buena Vista Rancheria of Me-Wuk Indians of California" was added to the government's formal list of Indian tribes. *See* 50 Fed. Reg. 6055-02 (1985). The Tribe remains on the list today. *See* 75 Fed. Reg. 60810 (October 1, 2010).

---

[2] The 1983 *Hardwick* Stipulation was filed in this action as Exhibit 16 to Plaintiffs['] Request for Judicial Notice of Documents, Doc. 16-5, pdf vol. IV. For the reasons stated in Plaintiffs' Request, namely pursuant to Fed. R. Evid. 201(b), the Tribe requests this Court take judicial notice of the 1983 *Hardwick* Stipulation.

The 1983 Stipulation expressly held in abeyance the matter of the Rancheria boundaries' restoration, a matter about which the court reserved jurisdiction to address later.  In 1987, the Buena Vista Rancheria and the Amador County tax collector, County Aassessor and Board of Supervisors, entered into a second *Hardwick* stipulation (the "1987 *Hardwick* Stipulation," a true and correct copy of which is attached hereto as **Exhibit 3**[3]) which ordered the original boundaries of the Buena Vista Rancheria restored and required Amador County and the United States to treat the Rancheria "as any other federally recognized Indian Reservation."[4]

After the United States Supreme Court confirmed the right of Indian tribes to engage in gaming on their lands free of state jurisdiction, *see California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), in 1988 Congress enacted IGRA to provide a regulatory structure for Indian gaming and to promote tribal economic development, self-sufficiency and self-government.  25 U.S.C. § 2702.  Under IGRA, class III (high-stake or slot-style) gaming may only be conducted by a tribe that has entered into a tribal-state gaming compact that has been approved by the Secretary. 25 U.S.C. § 2710(d)(1).  Despite Plaintiffs' assertions to the contrary, only Indian tribes—not the federal or state government—are responsible for the licensing, regulation and construction of class III (or any) casinos under IGRA.

Further, IGRA provides that tribal gaming is limited to "Indian lands," which the statute defines as "all lands" (i.e., fee, trust, and restricted fee) within the limits of "any Indian reservation," as well as all Indian trust and restricted fee lands wherever located.  25 U.S.C. § 2703(4).

---

[3] The 1987 *Hardwick* Stipulation was filed in this action as Exhibit 20 to Plaintiffs['] Request for Judicial Notice of Documents, Doc. 16-5, pdf vol. IV.  For the reasons stated in Plaintiffs' Request, namely pursuant to Fed. R. Evid. 201(b), the Tribe requests this Court take judicial notice of the 1983 *Hardwick* Stipulation.

[4] Despite the County's stipulation, on April 1, 2005, it filed suit in United States District Court for the District of Columbia against the United States seeking to invalidate the Compact Amendment (defined below) on the basis that the Rancheria is not an "Indian reservation" or "Indian lands" under federal law.  Case no. 1:05-cv-000658-RWR (the "Amador County case") (still pending).

Importantly, although tribes may request or the government may issue such determinations for various reasons, IGRA nowhere expressly requires a government "Indian lands" determination even prior to the Interior Department's acceptance of land into trust for gaming purposes. *Gila River Indian Cmty. v. United States*, CV-10-1993-PHX-DGC, 2011 WL 826282 (D. Ariz. Mar. 3, 2011) ("A gaming determination under IGRA is not one of the specified requirements in the Act.").

Additionally, IGRA nowhere requires further confirmation into the recognized status of an Indian tribe prior to the Secretary's affirmative action on a gaming compact.  Rather, the appearance of a tribe on the government's Federal Register list of tribes (which the Department maintains as required by the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4791 (1994) (codified at 25 U.S.C. § 479a-1)) means, *ipso facto*, that the tribe is federally-recognized.  The Buena Vista Tribe was re-listed in 1985 (and has appeared since) and, thus, there was no need for the Secretary to reexamine the Tribe's status when the Tribe submitted the 2004 Compact Amendment (discussed below) for approval.

On June 30, 2005, the NIGC issued an IGRA Indian lands determination in response to the Tribe's request.  The NIGC Opinion reviewed the history of the Buena Vista Rancheria, the Termination Act, and the 1983 and 1987 *Hardwick* Stipulations.  It concluded that the gaming site falls within the limits of an Indian reservation and therefore "meets the definition of Indian lands under IGRA."  NIGC Opinion at 11.  The Department of the Interior, Office of the Solicitor, concurred in the determination.

The Tribe is still working to overcome the effects of its wrongful termination.  It has decided to pursue its right to conduct tribal government gaming pursuant to IGRA in order to achieve economic self-sufficiency, to raise revenues to support tribal government programs, and to promote the health, welfare, and education of its members.  In order to further these goals, the Tribe entered

into a gaming compact with the State of California in 1999, which the Secretary approved on May 15, 2000.  65 Fed. Reg. 31,189 (May 16, 2000) (the "Compact").  Plaintiffs did not object to the State's entering into the 1999 Compact with the Tribe, and they have never challenged the Secretary's approval of that Compact.  In August of 2004, the Tribe and the State entered into an amendment to the Compact, which was submitted to the Secretary as required by IGRA and which was approved in accordance with IGRA.[5]  69 Fed. Reg. 76,004 (Dec. 20, 2004) (the "Compact Amendment").  Rather than amending the agreement in its entirety, the Compact Amendment documents the modification of particular Compact provisions.

Now, more than six years after the Secretary's approval of the Compact Amendment pursuant to IGRA[6] and six years after the NIGC Opinion, Plaintiffs, the "Friends of Amador County" (whose true identity is unknown), Bea Crabtree, and June Geary (collectively, "Plaintiffs") filed their complaint in this action on February 10, 2010, naming Kenneth Salazar, Secretary of the United States Department of the Interior, the NIGC, the State of California ("State"), and Arnold Schwarzenegger, in his official capacity as Governor of California ("Governor").   The Tribe was not named as a defendant, although the obvious goal of the lawsuit is to prevent the Tribe from constructing and operating a casino on its Rancheria.[7]

---

[5] Congress gave the Secretary of the Interior the complete discretion to approve a compact, disapprove a compact (only if the compact violates IGRA, another federal law, or the federal trust responsibility), or to refrain from acting on the submitted compact in which case, 45 days after its submission, it goes into effect to the extent consistent with IGRA.  25 U.S.C. § 2710(d)(8)(A)-(C).  The Amended Compact was approved per the Secretary's section 2710(d)(8)(C) discretion to neither approve nor disapprove the submitted amendment.

[6] This six year gap likely means Plaintiffs are time-barred in any case from brining a claim under the APA, given the general six-year statute of limitations applied to APA claims.  *See* 28 U.S.C. § 2401(a).

[7] The "Friends of Amador County" have attempted in other settings to slow or stop the Tribe's development plans: it has filed an opposition to the EPA's issuance of a wastewater discharge permit to the Tribe for this project; it has filed a protest to the State's issuance of a liquor license to the planned facility; and its only known member, Jerry Cassessi, has urged the County to sell the Tribe's Indian reservation land for the non-payment of property taxes.

---

The State moved to dismiss "the complaint … in this action because the State Defendants are immune from suit … and because Plaintiffs' claims are such that the action cannot, in equity and good conscience, go forward in the absence of required parties that cannot be involuntarily joined." Notice of State Defendants' Motion to Dismiss, Doc. 13, June 22, 2010, p. 2 ll. 6-10.  On October 18, 2010, the Court ordered Plaintiffs' claims against the State Defendants dismissed ("Order"). Importantly, the Court's Order concluded that although the first and fourth claims against the Governor were not barred by the State's sovereign immunity, those claims had to be dismissed for failure to state a claim under Rule 12 as IGRA fails to provide a private cause of action.  In its Order, the Court declined to address the State's argument that the complaint should be dismissed for failure to join the Tribe under Rule 19.  The Court did not dismiss the action in its entirety, however, and apparently the first and third causes of action—nominally against the United States Defendants, but effectively against the absent Tribe—remain.  The Tribe's arguments herein shall therefore address only Plaintiffs' first and third causes of action.

The first cause of action alleges "that both the Federal and State Defendants violated IGRA by approving class III gaming on ineligible lands."  Order, p. 3, ll. 25-26.  The third cause of action purports to challenge agency decision-making under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596.

However, the relief sought by Plaintiffs demonstrates clearly that the suit is in reality not a challenge to the standards by which the Secretary approved the Amended Compact or gaming ordinance.  Rather, the lawsuit is a challenge by unrelated third parties to the validity of the Compact Amendment and the *Hardwick* Stipulations to which the Tribe, County, and United States have agreed to be bound; a challenge to the status of the Rancheria as Indian country pursuant to 18 U.S.C.

§ 1151 and as "Indian lands" as IGRA defines that term; and a challenge to the federally-recognized status of the Tribe itself.  Plaintiffs Crabtree and Geary also make claims to Tribal membership.

The Tribe asks this Court to dismiss the complaint in its entirety because the Tribe and the State are indispensable parties under Rule 19, each of whom enjoys sovereign immunity and the resulting sovereign right not to defend themselves in litigation without their consent, which neither the Tribe nor the State has provided here.

### III. ARGUMENT:  THE TRIBE AND THE STATE ARE NECESSARY AND INDISPENSIBLE PARTIES

This Court has already dismissed Plaintiffs' claims against the State of California because IGRA fails to provide these Plaintiffs a private right of action.  The Plaintiffs' remaining claims against the United States should also be dismissed because both the absent Tribe and State are necessary and indispensable parties under Rule 19 who cannot be joined due to their sovereign immunity.[8]  Further, the federal defendants cannot and, in fact, have not vigorously or adequately represented the Tribe's substantial interests here, and presuming that it could represent the Tribe's interests endorses a federal paternalism that has long been rejected and denigrates the Tribe's sovereign status.  Aside from our argument here, Plaintiffs' claims pertaining to the status of the Tribe and Rancheria are also non-justiciable political questions or tribal membership disputes over which this Court lacks jurisdiction.

To be clear, regardless that they have attempted to challenge the Secretary's approval of the Compact Amendment, Plaintiffs' real attack—both expressly and as a practical matter—is on the status of the Tribe and its Indian lands under federal law.  Plaintiffs have named the United States as

---

[8] Changes to language of Rule 19 in 2007 were meant to be stylistic only.  "Although the wording of Rule 19 has changed since the district court dismissed this case, its meaning remains the same."  *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1077 (9th Cir. 2010).  Therefore, the Tribe herein maintains the traditional language of the rule, "necessary and indispensible."

a defendant because they cannot sue the Tribe directly due to its sovereign immunity, and this suit is thus an attempt to end-run the Tribe's sovereign immunity from suit.

Federal Rule of Civil Procedure 19 governs the joinder of persons needed for a suit's just adjudication. Whether litigation may proceed in the absence of a particular person or entity requires a court to determine under Rule 19 if (1) the absent party is required to be joined in the matter, (2) whether it is feasible to join that party, and (3), if joinder is not feasible, whether the action should proceed in equity and good conscience. *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1077 (9th Cir. 2010). The inquiry is a "practical, fact-specific one, designed to avoid the harsh results of rigid application." *See, e.g., Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002). The State of California and the Tribe are each required here because Plaintiffs' claims straightforwardly seek to invalidate a contract (i.e., the Compact Amendment) to which only the State and Tribe are parties. Plaintiffs' claims also attack the "Indian lands" status of the Buena Vista reservation and the recognized status (i.e., the legal existence) of the Tribe—matters each resolved in final stipulated judgments to which the Tribe and its members are party. However, due to sovereign immunity, neither the State nor the Tribe may be joined here without their consent, which neither has provided. Thus, this suit's continuation in the State's or Tribe's absence would substantially prejudice each such sovereign entity, and this action should therefore not proceed.

**A. The Tribe and State are Each Required for the Just Adjudication of Plaintiffs' Claims.**

Under Rule 19(a)(1), a party is required if (a), in that person's absence, the court cannot accord complete relief among existing parties; or (b), the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest, or (ii) leave an existing

party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.  Fed. R. Civ. P. 19.

> **1.      The Court Cannot Provide Complete Relief to the Present Parties in the Absence of Either the Tribe or the State—and Neither Such Entity May be Involuntarily Joined.**

A court cannot provide litigation parties complete relief where the requested remedy, if granted, would fail to bind all absent parties who are in a position to act in direct contravention of that remedy.  *See, e.g., Dawavendewa*, 276 F.3d at 1157.  Here, if the Court granted Plaintiffs' requested relief, the order would neither bind the Tribe nor the State and would, therefore, not provide Plaintiffs "complete" relief.  In *Dawavendewa*, the Ninth Circuit upheld the District Court's dismissal of a suit because the absent Navajo Nation was necessary and indispensible in a suit where an applicant for employment at a non-Indian-operated power facility located on the Navajo Nation reservation challenged an employment preference contained in the operator's lease with the Nation.  The plaintiff had asked for injunctive relief as to the lease provision at issue, and the Circuit Court held that complete relief could not be accorded because the absent Navajo Nation would not be bound by such relief and could still attempt to enforce the lease provision.  *Id*. at 1155.

Likewise, in *Clinton v. Babbitt*, 180 F.3d 1081 (9th Cir. 1999), the Ninth Circuit affirmed the lower court's dismissal of an action based on the finding that the absent Hopi Tribe was necessary and indispensable and would not be bound by any judgment there.  In *Clinton*, Navajo Nation members sued the Secretary of the Interior to enjoin the Secretary's approval of leases with Hopi pursuant to the Navajo-Hopi Land Dispute Settlement Act.  The court found that, in the Hopi Tribe's absence, plaintiffs could not be given complete relief "since judgment against the government would not bind the [other tribe], which could assert [contrary rights]."  *Id*. at 1088 (quoting *Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir. 1994)).

Similarly, a judgment here for Plaintiffs would fail to bind the absent Tribe or the State (both of whom are required here), and the Tribe may seek to proceed with class III gaming under the Compact Amendment and the State may seek to proceed by, in addition to asserting its other rights and obligations, collecting its revenue sharing dollars under the Compact Amendment.  Further, complete relief would not obtain here because, even if the Court granted Plaintiffs' requests preventing, for example, the Tribe's "pursuit" of a casino (Pl. Complaint, Doc. 1, p. 49) (the rendering of which would be highly questionable in any case[9]), the Tribe, not being bound by such judgment, may proceed with its development plans or, alternatively, pursue class III gaming under the 1999 Compact.[10]  The Tribe could also pursue class II gaming on its Rancheria without any compact.  No tribal-state gaming compact is required for class II gaming on Indian lands.  *See* 25 U.S.C. § 2710(b).  Additionally, as Plaintiffs seek adjudication of the status of the Tribe and its reservation under federal law, any judgment here would fail to enjoin the Tribe from functioning as a federally-recognized Indian tribe or from treating its Rancheria as an Indian reservation; likewise, it would fail to enjoin the State from continuing to treat the Tribe and the Rancheria as formally acknowledged under federal law.

The Court's Order states that Plaintiffs' counsel at oral argument acknowledged that Plaintiffs "did not bring a claim under the Compact.  Indeed, as third parties to the Compact, they could not do

---

[9] Under IGRA, the United States does not authorize, approve, or license Indian gaming on Indian lands, even if it approves compacts for class III gaming and gaming ordinances.  Rather, such activity is lawful due to the unique status of Indian tribes under federal law and, under IGRA, Indian tribes themselves issue all necessary licenses.

[10] *See Wells Fargo Bank v. Bank of Am.*, 38 Cal. Rptr. 2d 521, 525 (Cal. Ct. App. 1995) (explaining result of a novation versus amendment or modification); *Fanucchi & Limi Farms v. United Agri Products*, 414 F.3d 1075, 1081 (9th Cir. 2005) ("The intention of the parties to extinguish the prior obligation and to substitute a new agreement in its place must clearly appear.") (internal quotations omitted); *see also Airs Intern., Inc. v. Perfect Scents Distributions, Ltd.*, 902 F.Supp. 1141, 1148-49 (N.D. Cal. 1995) (discussing contract revival).

so." Order, p. 12, ll. 20-23.[11]   Despite Plaintiffs' contention to the contrary, however, the Compact

Amendment is prominently at issue in this lawsuit.  But because third parties may not seek relief

under the Compact Amendment, as previously explained by State Defendants' counsel and the Court,

any relief sought by Plaintiffs may not extend to the validity of the Compact Amendment.  Any

judgment entered by the Court that pertained to the Compact Amendment's validity would fail to

bind the only two parties to that contract.  *See Pit River Home & Agr. Co-op. Ass'n*, 30 F.3d at 1099

(relief would be incomplete where judgment would not bind all tribal parties); *Confederated Tribes of

the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) (same).

     If the Tribe is not a party to the lawsuit, it would not be bound to any judgment in favor of

Plaintiffs.  *See E.E.O.C. v. Peabody*, 400 F.3d at 780 ("The [proposed] judgment will not bind the

Navajo Nation in the sense that it will directly order the Nation to perform, or refrain from

performing, certain acts.").

     Related, the Ninth Circuit has explained that "a district court cannot adjudicate an attack of

the terms of a negotiated agreement without jurisdiction over the parties to that agreement."  *Clinton

v. Babbitt*, 180 F.3d at 1088 (citing *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)).

Thus, as discussed below, this action should also not proceed because it seeks to invalidate the

Compact Amendment—and neither of the two parties to that contract are present here—and further

seeks to invalidate the two stipulated judgments (negotiated agreements) that restored the Tribe and

Rancheria to federal-recognition, to which the Tribe is party.

     **2.**     **This Action Implicates Several Fundamental and Legally Protected Interests of the Tribe and its Adjudication in the Tribe's Absence will therefore Impair or Impede the Tribe's Ability to Defend Those Fundamental Interests.**

---

[11] As explained in the State Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss, Document 13-1, June 22, 2010, pp. 15-16.

The Tribe is also a necessary party because this suit implicates several substantial legally protected interests that will be impaired or impeded if the suit continues. Fed. R. Civ. P. 19(a)(1)(B)(i). For instance, the Tribe has a substantial legally protected interest in the Compact Amendment and the Tribe's resulting protected right under federal law to engage in class III gaming under that contract. It also has a substantial interest in the already-determined "Indian lands" status of its Rancheria and its ability to govern that land, in the enforceability of its laws, and in its long-settled status as a federally-recognized Indian tribe, and in the two stipulated judgments that restored the Tribe and Rancheria. The Tribe finally has a legally protected interest in the force of its sovereign immunity from suit, which this action seeks to circumvent. Each of these interests are legally protected and substantial and the Tribe's ability to defend them would be impeded and impaired if this action continues.

### a.      This Action Implicates the Tribe's Gaming Related Interests.

A lawsuit seeking to invalidate a contract requires the presence of the contract parties, who obtained legally protected interests by that contract. *Dawavendewa*, 276 F.3d at 1150. "[W]e reaffirm the fundamental principle … [that] a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Id.* at 1157. This suit seeks to invalidate the Compact Amendment, which is a contract between the State and the Tribe by which both such sovereigns obtained legally protected interests.

In *Dawavendewa*, 276 F.3d at 1156-57, n. 6, the Ninth Circuit's discussion of this issue indicates a *per se* rule that where a contract party is absent, an action seeking to invalidate that contract must not proceed, i.e., that an absent contract party is both necessary and indispensable. For example, it explains that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Id.* at 1156 (quoting *Lomayaktewa*, 520 F.2d at 1325).

In its discussion of *Lomayaktewa*, the Circuit Court explained that the absent tribe there was "necessary (and indispensable) . . . simply by virtue of being a signatory to the lease [at issue]." *Id.* (parenthetical in original) (further explaining that the Ninth Circuit has "reiterated this fundamental principle on numerous occasions.").

In *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002), racetrack owners brought an action against the Governor of Arizona, seeking to enjoin her from negotiating new or modified gaming compacts with Arizona Indian tribes.  The Ninth Circuit held that "[t]he interests of the tribes in their compacts are being impaired and, not being parties, the tribes cannot defend those interests." *Id.* at 1023.  *See also Clinton v. Babbitt*, 180 F.3d at 1089 (parties to leases are necessary to action challenging the constitutionality of the leases); *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996) (the Navajo Nation, the Hopi Tribe, and a coal company are necessary to an action seeking to challenge one of the provisions of a settlement agreement they entered into relative to the approval of coal leases on the tribes' respective reservations); and *McClendon v. U.S.*, 885 F.2d 627, 633 (9th Cir. 1989) (the tribe was a necessary party to an action by the lessee seeking to enforce a lease agreement signed by the tribe).  In *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F.Supp.2d 995, 1000-01 (W.D.Wis. 2004) , the court held that the tribal party to a class III gaming compact with the State of Wisconsin was a necessary and indispensable party to an action brought by two other tribes seeking to void the compact or modify one of its provisions.

Plaintiffs' action here challenges the validity of the Compact Amendment and seeks to permanently enjoin the Secretary from approving any compact or amendment providing for gaming on the Rancheria.  The Tribe's right to engage in class III gaming stems from its sovereign status and any denial of that right directly affects the Tribe's ability to exercise its sovereignty.

**b.    This Action Challenges the Legal Existence of the Tribe and its Indian Reservation and further Implicates other Fundamental Tribal Government Interests.**

Plaintiffs further challenge the "Indian lands" status of the Tribe's Rancheria under IGRA and the Tribe's legal existence.  These are substantial interests in themselves (and, as discussed, interests determined long ago) but they also affect the Tribe's ability to govern its Rancheria and the enforceability of its laws there.

If the Rancheria were ordinary fee land outside an Indian reservation, as Plaintiffs appear to argue, it would fall under State and County, rather that Tribal, jurisdiction.[12]  As a further result, the Rancheria would not be eligible for gaming under IGRA (and the Tribe would lose its expected class III gaming revenues) and would not be eligible for the other federal programs and services available to Indian reservations.  The Tribe thus unquestionably has a legally protected interest in engaging in gaming under IGRA and in otherwise exercising its governmental authority over its reservation, and in being free of State and County jurisdiction.  *See, e.g., Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1458-59 (9th Cir. 1994).  In *Confederated Tribes of the Chehalis Indian Reservation*, 928 F.2d at 1496, the plaintiff tribes, who share an Indian reservation with the Quinault Nation, sought to enjoin the Secretary from dealing with the Quinault Nation as the reservation's governing body.  *Id.* at 1498.  The Ninth Circuit held that the absent Quinault Nation had a legally protected interest in the case given that the plaintiff tribes sought "a complete rejection of the Quinault Nation's current status as the exclusive governing authority of the reservation."  *Id.*  The Buena Vista Tribe has exactly the same interest in continuing to be recognized as the governing authority over its reservation, free of State and County jurisdiction.

---

[12] *See* Felix Cohen, *Handbook of Indian Law* (2005 ed.) § 3.04(1), p. 182 (explaining that governing legal term for most jurisdictional issues is "Indian country," and "primary jurisdiction over land that is Indian country rests with the Federal Government and the Indian tribe inhabiting it, and not with the States.") (footnotes omitted).

In *Quileute Indian Tribe v. Babbitt*, 18 F.3d at 1458, the Quileute Tribe challenged the escheat of certain fractionated property interests to the Quinault Indian Nation under the Indian Land Consolidation Act.  The Ninth Circuit held that the Quinault Nation was a necessary party to the action because the suit "implicate[d] the Quinaults' governing status" over the escheated land and the Quinault Reservation.  *Id*. at 1458-59.  In addition, in *Dawavendewa*, the Ninth Circuit explained that "[u]ndermining the Nation's ability to negotiate contracts also undermines the Nation's ability to govern the reservation effectively and efficiently."  276 F.3d at 1157 (collecting cases to demonstrate the Nation's "multiple economic and sovereign interests … which may be impaired in its absence."). Similarly, as Plaintiffs seek to reverse the NIGC's approval of the Tribe's gaming ordinance, Plaintiffs ask to invalidate a Tribal law that is intended for the Tribe's enforcement and application on its Rancheria.  As such, the Tribe's absence here threatens its defense of that law and its ability to govern the Rancheria.

Even more, Plaintiffs ask this court to find that the Tribe does not legally exist, i.e., that it is not a federally-recognized Indian tribe.  If granted, this would deprive the Tribe and its members of all attendant immunities and benefits under federal law.  Plainly, nothing could affect the Tribe more than having its very legal existence litigated in its absence.  The Tribe's recognized status is beyond dispute (*see* 75 Fed. Reg. 60810 (October 1, 2010)) and non-justiciable in any case.

As Plaintiffs' complaint implicates the "Indian lands" status of the Rancheria and the Tribe's federal recognition, this suit expressly and as a practical matter implicates the validity and enforceability of the 1983 and 1987 *Hardwick* Stipulations (discussed above) by which the Tribe, the Tribal members, and the Tribe's reservation were all restored to federal-recognition.[13]  Plaintiffs'

---

[13] For example, the Complaint's Prayer for Relief, nos. 1, 2, and 5, pp. 46-48, 50, requests relief that would directly conflict with the restoration in the *Hardwick* Stipulations of the Rancheria's status as "Indian Country" and the identified individuals as Buena Vista Indians.

claims therefore implicate the validity and entire import of the *Hardwick* Stipulations in the absence of the key party to and beneficiary of those stipulations, namely the Tribe, which is party to both.[14]  If the Court here adjudicated these fundamental claims in the absence of the Tribe (which enjoys the sovereign right not to defend itself in litigation without its consent), the validity and effect of the *Hardwick* Stipulations would be put at issue, and the United States could be at risk of being sued by the Tribe (or the State) for, as an example, failure to comply with the *Hardwick* Stipulations to which it is bound.[15]

Finally, Indian tribes have a legally protected interest in preserving their sovereign immunity. *See Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) ("absent tribes have an interest in preserving their own sovereign immunity, with its concomitant right not to have [their] legal duties judicially determined without consent.") (internal quotations omitted).  The *Shermoen* court recognized that, by litigating the validity of a contract to which a tribe is a party, a lawsuit infringes upon the Tribe's sovereign right to decide whether to consent to suit, a determination only the Tribe or Congress is authorized make.  *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *Dawavendewa*, 276 F.3d at 1159.

Plaintiffs ask this Court to invalidate the Compact Amendment, declare that the Tribe's Rancheria fails to qualify as "Indian lands" under IGRA, and find that the Tribe is not federally-recognized.  Such relief would threaten the Tribe's legal existence and status under federal law and would jeopardize its ability to engage in class III gaming—rights extant under federal law and further affirmed in an enforceable tribal-state compact under IGRA.  Such relief could subject the Tribe to

---

[14] Although the United States was not signatory to the 1987 Stipulation, it was a party to the litigation and is bound by it. *See* NIGC Opinion at p. 5, n. 4.

[15] This analysis does not account for the other 16 tribes that were party to the 1983 *Hardwick* Stipulation that could be affected by this case.

State and County regulatory jurisdiction and deprive it of the benefits of the stipulated judgments in the *Hardwick* case.  As a consequence, Plaintiffs' claims should not proceed in the Tribe's absence.

> **3.**     **The United States has a Conflict and Cannot and Has Not Vigorously or Adequately Represented the Tribe's Various Gaming and Government Interests.**

Although the United States has a generic trust responsibility toward Indian tribes, that obligation nowhere includes a general statutory duty to represent the specific interests of an Indian tribe in the context of litigation.  *See Northern Arapaho Tribe v. Harnsberger*, 660 F.Supp.2d 1264, 1274, 1276-77 (D.Wyo. 2009).  Even more, absent the government's ownership or elaborate control of tribal property as imposed by statute, no fiduciary obligation exists on the government's part with respect to that property.  *See United States v. Mitchell*, 463 U.S. 206, 224 (1983).[16]  Thus, the trust doctrine does not itself appear to obligate the United States to take any particular position with respect to the Buena Vista Tribe's legal existence or the status of the Buena Vista Rancheria—only the Tribe can and should defend those fundamental interests.

Further, the United States' trust responsibility to Indian tribes, or its internal policy and inter-agency considerations, may conflict with the unique position of one Indian tribe regarding matters raised in litigation, as it does here.[17]  The Tribe makes its special and limited appearance primarily because it believes the United States in fact has not vigorously or adequately represented its interests in this litigation, and the Tribe should have the right to choose its own counsel.  *See Kickapoo Tribe*

---

[16] Here, the Tribe owns the Rancheria lands in fee, rather than in trust (wherein the United States owns the deed), and the government therefore probably lacks any enforceable fiduciary duty with respect to the tenure of Rancheria lands.

[17] *See* Ann C. Juliano, "Conflicted Justice: The Department of Justice's Conflict of Interest in Representing Native American Tribes," 37 *Ga. Law. Rev*. 1307, 1323 (2003) in which Professor Juliano describes the United States as a "Conflicted Trustee," and explains the inherent conflict of interest of the United States in tribal cases and, in particular, inter-agency conflicts between the Departments of Interior and Justice regarding appropriate litigation strategy or positions.  *Id*. at n. 136 and accompanying text.  Thus, although in the *Amador County* case the United States generally supported the NIGC Opinion, for the reasons stated above, it is nowhere obligated here to take the same position or to

1   *of Oklahoma v. Lujan*, 728 F.Supp. 791, 797 (D.D.C. 1990) (an Indian tribe is "entitled to protect on

2   its own" its interest in its own survival).

3        Courts recognize that the United States as trustee may not necessarily share a tribe's legally

4   protected interests or be in a position to adequately represent that tribe's interests.  *See Shermoen v.*

5   *United States,* 982 F.2d at 1318 ("While the United States might share the same ultimate goal as the

6   absent tribes, namely that of vindicating the constitutionality of the Act, it is unlikely that the

7   government could sufficiently represent the competing interests and divergent concerns of the tribes,

8   for the government must also act in keeping with its role and obligations as trustee."); *Citizen*

9
10  *Potawatomi Nation v. Norton*, 248 F.3d 993, 1000 *opinion modified on reh'g*, 257 F.3d 1158 (10th

11  Cir. 2001) ("In this case, [United States] Defendants have a duty to implement national Native

12  American policy.  The Shawnee, on the other hand, have an interest in receiving the funds at issue in

13  this case.  The two interests are not necessarily the same."); *Manygoats v. Kleppe*, 558 F.2d 556, 558

14  (10th Cir. 1977) ("When there is a conflict between the interest of the United States and the interest

15
16  of Indians, representation of the Indians by the United States is not adequate.").  *See also Am.*

17  *Greyhound Racing, Inc.*, 305 F.3d at 1023 n.5 ("the Governor's and the tribes' interests under the

18  compacts are potentially adverse.  Even the United States, which does have a trust responsibility, is

19  not an adequate representative of Indian tribes if the litigation presents it with conflicts of interest.").

20
21        In *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996), the United States

22  brought a qui tam action on behalf of the Menominee Tribe against a merchant based on its contracts

23  with the tribe for goods and services related to the tribe's gaming operations.  In that case, the court

24  concluded that the tribe was necessary, explaining, "[w]e … cannot conclude that the presence of the

25
26  United States in any way alleviates Rule 19(a)'s concern for the Tribe's interest in the lease contracts

27
28  rigorously defend the Tribe's particular and substantial interests in this litigation, which are different and much broader
    than the interests implicated in the *Amador County* case.

at issue in this litigation." *Id*. at 479.  The court went on to conclude that the tribe was indispensible,

because, as a party to the contracts at issue, the tribe had an interest in preventing the contracts from

being voided and a larger stake in challenging the potential "'precedent set by rescission of

transactions freely entered by the tribes.'" *Id*. at 480 (quoting the district court).  *See also Enter.*

*Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) ("the Tribe's

interest here in its sovereign right not to have its legal duties judicially determined without consent is

an interest which the United States' presence in this suit cannot protect").

In *Pit River Home & Agr. Co-op. Ass'n*, 30 F.3d at 1098, an association made up of a small

number of Indians sued the United States for ownership of the tribe's ranch but failed to join the

governing body of the tribe that owned the ranch and had been declared the beneficial owner by the

Secretary.  Finding the governing body of the tribe to be necessary and indispensible precluded from

being joined by sovereign immunity, the Court concluded that the United States could not adequately

represent the interests of the governing body because the case "could subject the United States to

inconsistent duties or obligations." *Id*. at 1101.  Here, as the government may be subject to liability

here (for example, by the Tribe with respect to the *Hardwick* Stipulations or the Compact

Amendment approval), it has a conflict and cannot therefore adequately represent this Tribe in this

litigation.

In addition, the United States' litigation policy appears clearly to favor judicial review and to

avoid taking certain positions that might conflict with its national Indian (or Indian litigation) policy.

For instance, here, the United States failed to move this Court to dismiss Plaintiffs' complaint, but

rather answered the complaint, despite the numerous bases for making such a motion (e.g., lack of

standing of these plaintiffs, lack of jurisdiction as to Tribal membership claims, lack of jurisdiction

for non-existence of federal waiver of sovereign immunity under the Administrative Procedure Act,

the non-justiciability of a tribe's federally-recognized status, the failure of IGRA to provide a private right of action, failure to state a claim upon which relief can be granted, etc.).  In addition, the United States has failed to make the argument the Tribe now makes here, i.e., that the Tribe and now the State are indispensible parties and that the litigation should not proceed in the absence of both such entities.

Counsel for the United States here indicated at the oral argument on the State's Motion to Dismiss the limited scope of the Justice Department's representation:

> The Court:  Don't you represent the interests of the tribe?
>
> Ms. Rabinowitz:  <u>Well, it depends</u>.  It depends on what claims are being asserted. … But with respect to Rule 19 and the indispensability of the tribe, <u>the United States is in the position of having to balance</u>, in – the determination whether or not to assert Rule 19 as a defense, the interests in maintaining the integrity of the judicial process and the availability of judicial review of agency decisionmaking against the very strong interests in the integrity of tribal sovereignty, including sovereign immunity from suit.  And in that – and they –
>
> ***
>
> The Court:  And my question to you is don't you represent the interests of the tribe?
>
> Ms. Rabinowitz:  Well, we are – I think what I can say about that is we – <u>I represent the Secretary of the Interior</u>.  And to the extent that this complaint before you is challenging the – Secretary's decision to allow 45 days to run pursuant to the Indian Gaming Regulatory Act, and thereby this tribal state compact at issue to be deemed approved by operation of law, <u>I represent the Secretary's decision to take no action</u>, if you will.
>
> ***
>
> The Court:  So that adequately represents the tribe's interest in the issues raised by this case, doesn't it?
>
> Ms. Rabinowitz:  <u>I'm not sure it does</u>. … Because there is a unique set of circumstances before you, which is – which is a contract between two parties.
>
> ***

The Court:  <u>All right.  Okay.  You don't represent the interests of the tribe then.</u>  All right.

Reporter's Transcript of Proceedings, Defendants' Motion to Dismiss, October 12, 2010, pp. 10-12 (emphasis added).  In brief, then, when asked by the Court whether the United States represents the Tribe's interests here, the United States' attorney responded by indicating that her client is the Interior Secretary (and by implication, not the Buena Vista Tribe), and that she is unsure that the government's participation in this litigation adequately represents the Tribe.  The Justice Department attorney further explained that that agency's representation is focused on the specific method by which the Compact Amendment was approved.  Thus, the Justice Department appears focused on the Compact Amendment approval issue, but Plaintiffs' claims implicate several other fundamental Tribal interests.

In the context of intervention under Rule 24 (which is similar to a Rule 19 inquiry[18]), the D.C. Circuit Court of Appeals has held that, where the intervenor's stake in the litigation differs from that of the existing defendant, the proposed intervenor's interests may not be adequately protected by the existing party.  In *Dimond v. District of Columbia*, 792 F.2d. 179, 192-93 (D.C. Cir. 1986), the Circuit held that a local government's representation was potentially inadequate to protect the interest of a proposed intervenor where the local government had no financial stake in the outcome.  Here, the United States has no financial stake in the outcome of this litigation.

In *Kickapoo Tribe of Oklahoma v. Lujan*, 728 F.Supp. at 791, the Kickapoo Tribe of Oklahoma sued the United States and challenged the Interior Secretary's recognition of the Texas Band of Kickapoo Indians as an Indian tribe.  Noting that the Texas Band "really is the subject at the center of this litigation," the Court found the Texas Band to be necessary and indispensable.  It held

---

[18] As the Circuit points out in *Shermoen*, 982 F.2d at 1318, the inquiry under Rule 24(a) is similar to that under Rule 19(a).

that to allow the case to proceed in the Texas Band's absence "would promote the worst kind of paternalism and seriously undermine the Band's interest in its own survival." *Id*. at 797. The Court noted that the Texas Band "has an interest in its own survival, an interest which it is entitled to protect on its own." *Id*.

The presence of the United States in this case does not adequately protect the Tribe's multiple interests. As the Tribe's trustee, the United States has only a general interest in defending the validity of the Compact Amendment, the gaming ordinance, the "Indian lands" status of the Rancheria, or the Tribe's recognized status. Further, the United States does not face the same kind of harm as does the Tribe if the Court grants Plaintiffs' requests. If the Compact Amendment is invalidated, this Tribe could be prevented from engaging in class III gaming on its Rancheria and will, among other things, lose its expected class III revenues. No such harm will befall the United States.

> **4.     The State has a Legally Protected Interest in the Subject Matter of this Action and the Disposition of this Action Will Impair Its Ability to Protect that Interest.**

The State of California is also a necessary party, which the Court has already dismissed. As is the Tribe, the State is a necessary party because it has a direct and substantial financial interest relating to the subject of the action, which is the validity of its contract (i.e., the Compact Amendment) with the Tribe, and because, if this case is adjudicated in the State's absence, it will, as a practical matter, impair the State's ability to protect that contract interest.

In *Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995), the Tribe sought to obtain validation of a gaming compact under federal law that the Supreme Court of Kansas held was not properly approved because the Governor lacked the requisite authority. The Circuit Court agreed with the district court that the State "has an interest in the validity of a compact to which it is a party and this interest would be directly affected by the relief

the Tribe seeks." *Id*.  The Court then reversed as an abuse of discretion the district court's conclusion that the State not indispensable.  *Id*. at 1500.

In *Pueblo of Sandia v. Babbitt*, 47 F.Supp.2d 49, 52-53 (D.D.C. 1999), the court held that a state was a necessary party in a lawsuit in which two tribes attacked the validity of the terms of a tribal state compact with the State of New Mexico.  The Court found that "there is no real dispute that the State of New Mexico is a necessary party" to the case because of its status as a party to the Compacts that the plaintiff tribes were attacking.

Finally, in *Lac du Flambeau v. Norton*, 327 F.Supp.2d at 1000, the court concluded that the State of Wisconsin, as a party to the compact being challenged, was a necessary party because it had "an obvious interest in this law suit."  *Id*. at 1001.

### 5.  The State's Interests are Not Protected by the United States Here.

The United States cannot adequately represent the State's interests in this matter.  *See generally Kickapoo Tribe of Indians*, 43 F.3d at 1500 ("Kansas' indispensability as a party in the Tribe's lawsuit is hardly a formality; not only its contractual rights are at issue but its fiscal interests are also potentially at stake").  The United States owes no trust duty to the State of California.  And given that the United States and the State are complex governmental entities with unique constituents and policy considerations, there is no reason to presume their interests are aligned.  [In fact, the United States is often in direct conflict with states, concerning IGRA compact issues.  *See, e.g., Texas v. United States*, 497 F.3d 491 (5th Cir. 2007).]  The State, not the United States, is one of the two parties to the Compact Amendment.  As the Tribe has argued and as (former) State Defendants have expressly asserted, "[t]he validity of the Compact cannot be challenged without <u>both</u> the State and the Tribe as a party."  State Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss, p. 19 (emphasis added).  Thus, even if the State were forcibly re-joined in this matter, as the

---

Tribe is still absent and cannot be joined due to its sovereign immunity, which it has not waived, this action should not proceed.

### 6.     The Tribe and State's Absence Would Lead to Inconsistent Obligations.

Rule 19(a)(1)(B)(ii) also counsels in favor of finding that the Tribe and State are necessary parties because the absence of the State and the Tribe may lead to multiple and inconsistent obligations.

In reaction to any relief awarded to Plaintiffs, the Tribe or the State could bring their own actions against the federal defendants, making demands that are inconsistent with any relief supplied to Plaintiffs.  Thus, the remaining defendant may be subject to a substantial risk of incurring multiple inconsistent obligations by reason of the claimed interests of the Tribe and the State.  *See Davis v. United States*, 199 F.Supp.2d 1164, 1177 (W.D.Okla. 2002), *aff'd*, 343 F.3d 1282, 1292 (10th Cir. 2003), *cert. denied*, 124 S.Ct. 2907 (2004) ("The Court also finds compelling the very real possibility that defendants would incur a substantial risk of inconsistent legal obligations if the BIA officials were subsequently sued by the Seminole Nation for actions taken in violation of tribal law as a result of plaintiffs' success in this cause of action.").

The same is true here as the Tribe could sue the United States for failing to recognize its earlier Compact Amendment approval or failure to adhere to the *Hardwick* Stipulations.  But if the present case proceeds to judgment, the United States could, for example, find itself prevented from approving a compact amendment despite its specific responsibility to approve compacts under IGRA.  *See E.E.O.C. v. Peabody*, 400 F.3d at 780 ("If the EEOC is victorious in this suit but the Nation has not been joined, the Nation could possibly initiate further action to enforce the employment preference against Peabody, even though that preference would have been held illegal in this litigation."); *Dawavendewa*, 276 F.3d at 1156 ("[Defendant] would be between the proverbial rock

and a hard place—comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it.").

Additionally, as the State identified in its Memorandum of Points and Authorities, at p. 27, in the event of a judgment here that implicates the Compact Amendment, the State or Tribe may require further litigation to identify the rights and obligations of the parties in the face of inconsistent mandates. The State could also face litigation over the Tribes' distributions from the California Indian Revenue Sharing Trust Fund if such distributions were withheld as a result of this suit.

**B. The Tribe and the State Cannot Be Joined Because of Their Sovereign Immunity.**

If the Court determines that the Tribe and the State are necessary, it must then decide whether the absent and necessary parties can be joined. Fed R. Civ. P. 19. If not, the Court must then decide whether the parties are indispensable, in which case the action must be dismissed. *Id*. Neither the Tribe nor the State can be involuntarily joined in a lawsuit. As the State has already explained in its motion to dismiss and as this Court has already held, this case cannot proceed directly against the State due to its Eleventh Amendment sovereign immunity. Order at 6-7; State Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss, Doc. 13-1, pp. 10-13.

Similarly, as a federally-recognized tribe, the Tribe enjoys sovereign immunity from suit. *Santa Clara Pueblo*, 436 U.S. at 58; *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751 (1998). The Tribe has not consented to suit by Plaintiffs in this action.

Given that neither of the necessary parties to this action can be joined involuntarily, this case must be dismissed as both the Tribe and the State are indispensable under Rule 19(b).

**C.     The Tribe and the State Are Indispensable to this Case and the Suit May Not Proceed in Equity and Good Conscience in Their Absence.**

In determining whether necessary parties who cannot be joined are indispensable, Rule 19(b) requires courts to consider whether, "in equity and good conscience," a suit should proceed or be

dismissed.  Fed. R. Civ. P. 19(b).  The four factors to determine whether dismissal is proper are: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.  Fed. R. Civ. P. 19.

    **1. The Tribe and the State will Each be Prejudiced if this Case Proceeds in the Absence of Both Parties.**

     **a. The Tribe's Interest in Conducting Gaming On and Governing Its Rancheria Will be Prejudiced if this Case Proceeds.**

    The same legal interests that make the Tribe and the State necessary parties also serve to show prejudice if the relief sought by Plaintiffs is granted.  *See Kickapoo Tribe of Indians*, 43 F.3d at 1498 n. 9 ("The inquiry as to prejudice under Rule 19(b) is the same as the inquiry […] regarding whether continuing the action will impair the absent party's ability to protect its interest.") (citations omitted).

    There can be no doubt that the Tribe will be prejudiced if Plaintiffs are granted the relief they seek.  Plaintiffs seek a permanent injunction prohibiting the Secretary from approving a class III gaming compact amendment permitting gaming on the Rancheria.  If the Secretary's approval of the Compact Amendment is set aside, and if the Secretary is enjoined from approving a compact for class III gaming on the Rancheria, the Tribe could be prevented from exercising its sovereign right to conduct class III gaming on its Rancheria, and it will be deprived of the revenues that will be generated by those gaming activities.  Furthermore, if the Court declares that the Rancheria is not "Indian country" or not "Indian lands" under IGRA, or that the Tribe is not federally-recognized, the Tribe could cease to exist or could be prevented from exercising sovereignty over its reservation, and it could be subject to State and County regulation with regard to the use of its Rancheria.  Such an

order could result in the Rancheria being subject to State and local property taxation and regulation, which could lead to its loss, and would incapacitate the Tribe from providing infrastructure, welfare, and programs to the Tribal members or beneficial to the Rancheria.

        **b.**        **The State's Interests in Allowing Indian Gaming under IGRA and in Raising Revenue Will be Prejudiced if this Case Proceeds.**

The prejudice to the State will be significant if Plaintiffs are granted the relief they request. The State's interests include the collection of the financial benefit of its bargain under the Compact Amendment it negotiated with the Tribe.[19]  The State's interest in entering into government-to-government agreements with the more than one hundred tribes located within its boundaries to address numerous issues of public concern will be seriously harmed if other persons or entities can attack and invalidate its contracts without its participation in the proceedings in which the validity of those contracts is at issue.

        **2.**        **Prejudice to the Tribe and the State Cannot be Lessened or Avoided through Protective or Crafted Relief.**

Plaintiffs ask this Court to set aside the Secretary's approval of the Compact Amendment, and they also ask that he be permanently enjoined (see Complaint, Prayer for Relief, no. 8, p. 51, l. 27) from allowing the Tribe to construct a casino on the Rancheria.  Additionally, Plaintiffs seek a declaratory judgment that the Rancheria is not "Indian country" and is not "Indian lands" under IGRA, and that the Tribe is not a federally-recognized Indian tribe.  In short, Plaintiffs seek to prohibit the Tribe from exercising jurisdiction over its Rancheria and from gaming on it.  The Plaintiffs' requested relief therefore implicates the Compact Amendment and the *Hardwick* Stipulations.  According to Plaintiffs' complaint, no form of relief short of these total prohibitions

---

[19] Under Section 4.3.3 of the Compact Amendment, the Tribe has agreed to pay 15% of the first $200 million in Net Win to the State, and 25% of Net Win over $200 million.

would satisfy Plaintiffs, and any limitation imposed on the Tribe's sovereignty over its land and any restraint on its ability to conduct gaming on its Rancheria would unduly prejudice the Tribe.

In *Kickapoo Tribe of Indians*, 43 F.3d at 1498, the D.C. Circuit indicated that once it is determined that an absent party will be prejudiced by a judgment and that there is no way to avoid such prejudice by shaping the relief, there are "grounds to dismiss the complaint for failing to join an indispensible party without consideration of any additional factors."

Having shown that the Tribe and State will be prejudiced if the requested relief is granted, and that there is no way the Court can avoid that prejudice, there is, according to *Kickapoo Tribe of Indians*, little need to consider the additional factors.  Nonetheless, the Tribe continues its analysis of the remaining factors set forth under Rule 19(b) for the Court's consideration.

> **3.     A Judgment Rendered in the Tribe and State's Absence Will be Inadequate.**

As explained above, this suit seeks to invalidate the Compact Amendment in the absence of the only two parties to that contract, the Tribe and the State.  It also seeks to render meaningless the *Hardwick* Stipulations.  *See Dawavendewa*, 276 F.3d at 1162 ("No partial relief is adequate.  Any type of injunctive relief necessarily results in the above-described prejudice to [Defendant] and the Nation.").  As neither the State nor the Tribe would be bound here to an order of this Court, such an order would be inadequate.  In any event, the adequacy factor "cannot be given dispositive weight when the efficacy of the judgment would be at the cost of the absent parties' rights to participate in litigation that critically affect their interests."  *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986).

> **4.     The State and Tribe's Sovereign Immunity Favors Dismissal.**

Courts have consistently found that a tribe's interest in sovereign immunity outweighs a plaintiff's interest in having an adequate alternate remedy.  Courts demonstrate a "strong policy that

has favored dismissal when a court cannot join a tribe because of sovereign immunity." *Davis v. United States*, 192 F.3d 951, 960 (10th Cir. 1999); *see also Pit River Home & Agric. Coop. Ass'n*, 30 F.3d at 1102 ("the [tribes'] interest in maintaining its sovereign immunity outweighs the [plaintiff's] interest in litigating its claim"). "[T]here is very little room for balancing of other factors set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests compelling by themselves." *Kickapoo Tribe of Indians*, 43 F.3d at 1496 (quoting *Wichita and Affiliated Tribes*, 788 F.2d at 777 n.l3) (internal quotations omitted). As *Kickapoo Tribe of Indians* explained, a district court is "confronted with a more circumscribed inquiry" when it assesses whether a lawsuit should continue when a necessary party is immune from suit. *Id.*, 43 F.3d at 1497. Although the Ninth Circuit pursues the four-factor analysis even when immune tribes are at issue, it has "regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs." *Am. Greyhound Racing, Inc.*, 305 F.3d at 1025.[20]

## IV. CONCLUSION

Plaintiffs here do not seek review of agency action; they seek to have this Court directly determine substantive issues in the absence of indispensible parties, namely, the Tribe and the State. Plaintiffs attempt to use the APA to bypass the sovereign immunity of the United States and the Tribe in order to litigate the validity of the Compact Amendment and the *Hardwick* Stipulations. Plaintiffs also seek to attack the "Indian lands" status of the Rancheria, the federally-recognized status of the

---

[20] Plaintiff Crabtree and Geary appear to allege injuries related to the federal status and membership of the Tribe. Complaint p. 3, Section II, ¶ 1. However, federal courts lack jurisdiction to decide tribal membership disputes, *Santa Clara Pueblo*, 436 U.S. at 55, tribal status claims are non-justiciable political questions left to the exclusive province of the executive branch, *W. Shoshone Bus. Council For & on Behalf of W. Shoshone Tribe of Duck Valley Reservation v. Babbitt*, 1 F.3d 1052, 1057 (10th Cir. 1993); *Miami Nation of Indians of Indiana, Inc. v. U.S. Dept. of the Interior*, 255 F.3d 342, 347 (7th Cir. 2001), and such claims are long out-of-time in any case, *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) ("Laches is an equitable time limitation on a party's right to bring suit, which is derived from the maxim that those who sleep on their rights, lose them.") (internal quotations omitted).

Tribe, and the Tribe's receipt of distributions from the California Indian Revenue Sharing Trust Fund *without the presence of the Tribe*.  Hence, the Court should dismiss the complaint for failure to join the Tribe and the State both as indispensible parties under Rule 19, neither of which has consented to be sued here.


DATED: August 16, 2011

> Respectfully submitted,
>
> /s/ PADRAIC I. MCCOY
>
> PADRAIC I. MCCOY
> Tilden McCoy + Dilweg LLP
> *Attorneys for Buena Vista Rancheria of Me-Wuk Indians*