UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| FRIENDS OF AMADOR COUNTY, BEA CRABTREE, JUNE GEARY, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>KENNETH SALAZAR, SECRETARY OF THE UNITED STATES DEPARTMENT OF INTERIOR, United States Department of Interior, THE NATIONAL INDIAN GAMING COMMISSION, GEORGE SKIBINE, Acting Chairman of the National Indian Gaming Commission, THE STATE OF CALIFORNIA, Arnold Schwarzenegger Governor of the State of California, <br><br>　　　　Defendants. <br>_____/ | NO. CIV. 2:10-348 WBS CKD <br><br><u>MEMORANDUM AND ORDER RE:</u> <u>MOTION TO DISMISS</u> |

----oo0oo----

　　　　Plaintiffs Friends of Amador County, Bea Crabtree, and June Geary brought this action against defendants Kenneth Salazar in his capacity as the Secretary of the United States Department of Interior ("Secretary"), the National Indian Gaming Commission

1

("NIGC"), and George Skibine (collectively the "Federal Defendants"), as well as the State of California ("State") and Governor Arnold Schwarzenegger ("Governor," collectively the "State Defendants") arising out of plaintiffs' objections to a tribal-state compact allowing the construction of a casino by the Buena Vista Rancheria of Me-Wuk Indians ("Tribe") in Amador County.  The State Defendants have previously been dismissed from the suit.  Presently before the court is the Tribe's special appearance as a non-party to present a motion to dismiss the Complaint for failure to join the Tribe and State as necessary parties under Federal Rule of Civil Procedure 19.

I.  Factual and Procedural Background

In 1999, then-California Governor Gray Davis entered into a series of tribal-state compacts with fifty-nine different Indian tribes, including the Tribe, allowing class III gaming[1] on tribal land pursuant to the compacting requirements of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721.  (Compl. ¶ 22.)  These compacts were subsequently ratified by the California legislature.  (Id.)  In August 2004, the Tribe and the

---

[1] Three classes of gaming are subject to regulation under IGRA.  Class I gaming includes "social games solely for prizes of minimal value or traditional forms of Indian gaming," 25 U.S.C. § 2703(6), and is subject to solely tribal regulation.  Id. § 2710(a)(1).  Class II gaming is regulated through joint federal-tribal regulation, id. § 2710(a)(2), and includes games such as bingo and card games that are "explicitly authorized" or "are not explicitly prohibited by laws of the State . . . but only if such card games are played in conformity" with the state's laws and regulations.  Id. § 2703(7).  Class III gaming includes "all forms of gaming that are not class I gaming or class II gaming," such as casino games, slot machines, and lotteries, id. § 2703(8), and can only be authorized through a tribal-state compact, subject to federal approval and oversight.  Id. § 2710(d)(1).

2

Governor negotiated and completed an amended compact (the "Compact"), which was ratified by the California legislature and submitted to the Secretary as required by IGRA in September 2004. See Cal. Gov't Code § 12012.45. The Secretary then approved the Compact, which became effective as a matter of law. Notice of Approved Tribal-State Class III Gaming Compact, 69 Fed. Reg. 76004-01 (Dec. 20, 2004).

Plaintiffs allege that the Compact between the State and the Tribe is illegal under IGRA. The Complaint alleges that the Tribe's land is not eligible for class III gaming because it is owned in fee simple, not in trust by the federal government, and accordingly is not "Indian land" as required under the statute. (Compl. ¶¶ 8-9.) The Complaint further claims that the Tribe's federal recognition is invalid because it was established by individuals who were not true descendants of the Buena Vista Rancheria of Me-Wuk Indians and that plaintiffs Crabtree and Geary are true descendants of the peoples who lived on the Buena Vista Rancheria land. (Id. ¶¶ 16-18.) Plaintiffs accordingly allege that the Federal Defendants' approval of class III gaming on the Tribe's land was arbitrary, capricious, and contrary to IGRA and that the State Defendants acted unlawfully when they determined that the Tribe was eligible for class III gaming and entered into the Compact. (Id. ¶¶ 10, 22-27.)

Following the court's dismissal of the State Defendants, the Complaint retains two causes of action. The first claim alleges that the Federal Defendants violated IGRA by

3

approving class III gaming on ineligible lands.² (Id. ¶ 34.) Plaintiffs' second claim alleges that the approval of the Tribe's gaming ordinance and the Compact violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596, because such approval was arbitrary and capricious and in violation of IGRA. (Compl. ¶ 42.) The Complaint requests the court to declare that the Tribe's land is not eligible for gaming under IGRA, that the Compact is invalid under IGRA and APA, and that the environmental assessment of the land was inadequate. The Complaint also asks the court to enjoin the Tribe from further pursuit of class III gaming on its land and to create a constructive trust over funds currently being paid to the Tribe. The Tribe now moves to dismiss the Complaint pursuant to Rule 19.

II. Discussion

    A. Motion to Dismiss

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more

---

² The court previously dismissed this cause of action against the State Defendants because it found that IGRA does not provide a cause of action for third parties. (Docket No. 13) The Federal Defendants did not join in the prior motion and therefore the claim remains against them.

4

than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Federal Rule of Civil Procedure 19 governs the joinder of persons necessary for a suit's just adjudication.  Under Rule 19, a court must dismiss an action if: (1) an absent party is required, (2) it is not feasible to join the absent party and (3) it is determined "in equity and good conscience" that the action should not proceed among the existing parties.[1] Republic of Philippines v. Pimentel, 553 U.S. 851, ---, 128 S. Ct. 2180, 2188 (2008); Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1498 (9th Cir. 1991).

### 1.   Rule 19(a) – Required Party

A person is a required party under Rule 19(a)(1) if (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B), the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest, or (ii) leave an existing party subject to a

---

[1] When Rule 19 was amended in 2007, the word "necessary" was replaced by "required" and the word "indispensable" was removed.  The changes were intended to be "stylistic only" and "the substance and operation of the Rule both pre- and post-2007 are unchanged." Republic of Philippines v. Pimentel, 553 U.S. 851, ---, 128 S. Ct. 2180, 2184 (2008) (quoting the Rules Committee).

5

1  substantial risk of incurring double, multiple, or otherwise
2  inconsistent obligations because of the interest.  Fed. R. Civ.
3  P. 19(a)(1).  If the Tribe satisfies either test, it is a
4  required party under Rule 19.

5  First, the court cannot provide the litigation parties
6  complete relief where the requested remedy, if granted, would
7  fail to bind all absent parties who are in a position to act in
8  direct contravention of that remedy.  In <u>Dawavendewa v. Salt</u>
9  <u>River Project Agricultural Improvement & Power District</u>, 276 F.3d
10 1150 (9th Cir. 2002), the Ninth Circuit upheld the dismissal of a
11 suit because the absent Navajo Nation was a necessary and
12 indispensable party where an applicant for employment at a non-
13 Indian-operated power facility located on the Navajo Nation
14 reservation challenged an employment preference contained in the
15 operator's lease with the Nation.  The plaintiff requested
16 injunctive relief as to the lease provision at issue, and the
17 Ninth Circuit held that complete relief could not be afforded
18 because the absent Navajo Nation would not be bound by such
19 relief and could still attempt to enforce the lease provision.
20 <u>Id.</u> at 1155.

21 Similarly, in <u>Pit River Home & Agricultural Cooperative</u>
22 <u>Ass'n v. United States</u>, 30 F.3d 1088 (9th Cir. 1994), a group of
23 Indians sued the United States to challenge Pit River Council's
24 beneficial ownership of Indian lands.  The Ninth Circuit upheld
25 the dismissal of suit and held that the absent Pit River Council
26 was a necessary and indispensable party because "even if the
27 Association obtained its requested relief in this action, it
28 would not have complete relief, since judgment against the

6

government would not bind the Council, which could assert its right to possess the Ranch." Id. at 1099.

In this case, the Tribe is not a party to the lawsuit, so it would not be bound by any judgment in favor of plaintiffs. See E.E.O.C. v. Peabody W. Coal Co., 400 F.3d 774, 780 (9th Cir. 2005) ("The [proposed] judgment will not bind the Navajo Nation in the sense that it will directly order the Nation to perform, or refrain from performing, certain acts."). The Tribe could therefore act contrary to the judgment, preventing the court from according complete relief to plaintiffs.

Second, a person is a required party if the suit impairs or impedes its legally protected interests. Fed. R. Civ. P. 19(a)(1)(B)(I). Under Rule 19(a)(1)(B), a party need only "claim" an interest, not establish it with certainty. The court may only exclude claims of interest that are patently frivolous. See Shermoen v. United States, 982 F.2d 1312, 1317 (9th Cir. 1992). This suit implicates several of the Tribe's legally protected interests that will be impaired or impeded if the suit continues.

Plaintiffs seek to invalidate the Compact and enjoin the Tribe from engaging in class III gaming. This impairs the Tribe's substantial gaming-related interests, including its right under federal law to engage in class III gaming. See Am. Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1023 (9th Cir. 2002) (holding that "[t]he interests of the tribes in their compacts are impaired and, not being parties, the tribes cannot defend those interests"); Dawavendewa, 276 F.3d at 1156 ("[N]o procedural principal is more deeply-imbedded in the common law

7

than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." (quoting <u>Lomayaktewa v. Hathaway</u>, 520 F.2d 1324, 1325 (9th Cir. 1975))). Plaintiffs argue that the Tribe does not have a legally protected interest because it only has an economic interest stemming from the approval of the Compact. Unlike cases in which non-parties have indirect economic interests that do not qualify as "legally protected interests," the Tribe is a party to the Compact and has a direct, and legally protected, interest in its approval.

The Tribe also has a substantial interest in the already-determined "Indian lands" status of its Rancheria, its ability to govern that land, its ability to enforce its laws, its status as a federally-recognized Indian tribe, the two stipulated judgments that restored the Tribe and Rancheria, and its sovereign immunity not to have its interests adjudicated without its consent. <u>See</u> <u>Shermoen</u>, 982 F.2d at 1317 ("[A]bsent tribes have an interest in preserving their own sovereign immunity, with its concomitant 'right not to have [their] legal duties judicially determined without consent.'" (quoting <u>Enter. Mgmt. Consultants v. U.S. ex rel. Hodel</u>, 883 F.2d 890, 894 (10th Cir. 1989))). The Tribe's ability to protect these legal interests would be impeded and impaired if this action continues.

"Impairment may be minimized if the absent party is adequately represented in the suit. The United States may adequately represent an Indian tribe unless there is a conflict of interest between the United States and the tribe." <u>Makah Indian Tribe v. Verity</u>, 910 F.2d 555, 558 (9th Cir. 1990)

8

(citations omitted).  Plaintiffs argue that there is no conflict of interest between the United States and the Tribe, and therefore the suit for declaratory relief should proceed.  From her response to the court's questions at the hearing on this motion, the attorney for the United States clearly does not agree.  The Federal Defendants' litigation policy in this case appears to favor judicial review and to avoid taking positions that may conflict with its national Indian policy.  Their failure to move this court to dismiss this case and their refusal to take a position on this motion[2] appears to conflict with the Tribe's interest in protecting their tribal status and not having their interests litigated in their absence.  See <u>Citizen Potawatomi Nation v. Norton</u>, 248 F.3d 993, 1000, <u>modified on reh'g</u>, 257 F.3d 1158 (10th Cir. 2001) ("In this case, [United States] Defendants have a duty to implement national Native American policy.  The Shawnee, on the other hand, have an interest in receiving the funds at issue in this case.  The two interests are not necessarily the same.").

When asked if the United States represents the interests of the Tribe, counsel responded that "[i]t depends on what claims are being asserted" and that "the United States is in the position of having to balance" the interests.  (Rep.'s Tr. of Hr'g, Def.'s Mot. to Dismiss, Oct. 12, 2010, at 10:13-20.)  This balancing presents a conflict of interest with the Tribe and

---

[2] The Federal Defendants' counsel was questioned at length during oral arguments regarding the United States' position on the Tribe's Rule 19 motion.  Her only position was that the United States has no position on the outcome of this motion.

suggests that its legal interests may not adequately be protected if it remains an absent party. Accordingly, the Tribe is a required party in this suit.

    2. Rule 19(b) – Proceeding with Existing Parties

    Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers. Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 356 (2d Cir. 2000). In order to qualify for sovereign immunity, a tribe must be federally recognized. See Pit River Home & Agric. Coop. Ass'n, 30 F.3d at 1100. Immunity may be waived by either Congress or the tribe itself, but only if done in an unequivocal manner. C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe, 532 U.S. 411, 417 (2001). The Tribe is federally recognized, and neither the Tribe nor Congress has consented to its being in this action, therefore the Tribe cannot be joined because it is immune from civil suit.

    When a required person cannot be joined in the suit, the court must determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) outlines four factors for courts to consider in making this determination: (1) the extent to which judgment rendered in the person's absence might prejudice that person; (2) the extent to which the prejudice could be lessened or avoided by protective provisions, shaping the relief, or other measures; (3) whether judgment in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Id. Because the Tribe has sovereign

10

immunity, little balancing of these factors is required. See Kescoli v. Babbitt, 101 F.3d 1304, 1311 (9th Cir. 1996) ("If the necessary party is immune from suit, there may be 'very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor.'" (quoting Confederated Tribes of the Chehalis Indian Reservation, 928 F.2d at 1499)). Moreover, the factors, taken together, weigh in favor of finding that the Tribe is an indispensable party.

The first factor in the Rule 19(b) analysis is essentially the same as the legal interest test in the "necessary party" analysis. See, e.g., Quileute Indian Tribe v. Babbitt, 18 F.3d 1456, 1460 (9th Cir. 1994). Accordingly, the prejudice prong is met here as the Tribe's absence might prejudice several of its legally protected interests. The potential prejudice to the Tribe cannot be effectively minimized under the second factor of Rule 19(b) because no adequate relief for plaintiffs can be shaped such that the Tribe would not be prejudiced. Any adjudication of the Federal Defendants' review of the Compact or the Tribe's federal status would prejudice the Tribe's interests. The consideration of the final two prongs is not necessary where the Tribe will be prejudiced by a judgment rendered in its absence and there is no way the court can avoid the prejudice. See Kickapoo Tribe of Indians v. Babbitt, 43 F.3d 1491, 1498 (D.C. Cir. 1995). Accordingly, the court cannot proceed in equity and good conscience with the existing parties.[3]

---

[3] Because the Complaint is dismissed for failure to join the Tribe as a required party under Rule 19, the court will not address the Tribe's argument that the State was also an indispensable party.

11

B.   <u>Sanctions</u>

Plaintiffs filed their papers in opposition to the Tribe's motion to dismiss on September 16, 2011. According to Local Rule 230(c), opposition to the granting of a motion must be filed and served not less than fourteen days preceding the noticed hearing date. As the hearing for this matter was set for September 26, 2011, plaintiffs filed their papers four days late.

Local Rule 230(c) provides that, "No party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party." Because it is more important that the court reach the correct decision on a dispositive motion than to enforce technical sanctions, the court chose to hear counsel at oral argument, and instead to impose financial sanctions under Local Rule 110, for failure to comply with the Local Rules. Therefore, the court will sanction plaintiffs' counsel, James E. Marino, $100.00 payable to the Clerk of the Court within ten days from the date of this Order, unless he shows good cause for his failure to comply with the Local Rules.

IT IS THEREFORE ORDERED that this action be, and the same hereby is, DISMISSED.

IT IS FURTHER ORDERED that within ten days of this Order James E. Marino shall either (1) pay sanctions of $100.00
///
///
///
///
///

12

to the Clerk of the Court, or (2) submit a statement of good cause explaining his failure to comply with Local Rule 230(c).

DATED: September 29, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

13